■    In the Matter of EMANUEL REVICI. BLUE CROSS AND BLUE SHIELD OF GREATER NEW YORK, Appellant; EMANUEL REVICI, as Trustee for TRAFALGAR HOSPITAL, Respondent.—Order of the Supreme Court, New York County, entered August 30, 1978, directing the entry of judgment for the amount specified in the stipulation between the parties affirmed, without costs and without disbursements. The controversy here involved arises out of the judicial dissolution of Trafalgar Hospital (Trafalgar), pursuant to Not-For-Profit Corporation Law (§ 1102, subd [a], par [1], cl [A]). By order dated January 31, 1978, Blue Cross/Blue Shield, among others, was directed to show cause why it should not account and forthwith turn over to Trafalgar all funds then held in escrow for its benefit. Before the application came on to be heard, a stipulation was entered into between counsel for Trafalgar and Blue Cross/Blue Shield pursuant to the terms of which the amount owed by Blue Cross/Blue Shield to Trafalgar was fixed in the sum of $45,303.43, computed by deducting certain stipulated sums from processed allowable claims. It was further agreed that specified adjustments due from either party to the other were not included in the stipulation and that in the event unrefunded subscriber deposits, one of the items deducted in reaching the sum of $45,303.43, exceeded the amount fixed, Blue Cross/Blue Shield would be permitted to deduct "these paid claims from *other* monies

due Trafalgar Hospital" (emphasis supplied). The remaining proviso required payment upon the performance of certain acts by Trafalgar. It is undisputed that Trafalgar performed the acts required of it by the stipulation. Its demand for payment of the sum fixed by agreement was met by the contention that adjustments due Blue Cross/Blue Shield for prior years, which, as our dissenting brother notes, had not yet been determined, exceeded the amount due Trafalgar under the agreement; that Blue Cross/Blue Shield is entitled to set off this indebtedness against the debt owing from it to Trafalgar and, by consequence, there is nothing due to Trafalgar. That the parties knew and understood precisely what they were doing is apparent from the stipulation itself. In the final paragraph they provided that if the unrefunded subscriber deposits exceeded the amount fixed by the agreement, Blue Cross/Blue Shield would be permitted to deduct the excess from other payments due to Trafalgar. In the penultimate paragraph, the paragraph critical to this case, they expressly excluded from the ambit of the stipulation rate adjustments for prior years and other items. Had they intended that these were to be deducted from the amount due, they could easily have manifested that intention in their treaty. Their failure to do so makes it plain, and indeed the stipulation itself so states, that payment of the amount fixed was to be made upon the performance by Trafalgar of the acts set forth in the agreement. Since Trafalgar has performed the obligations undertaken by it, it is entitled to the payment provided for. Special Term so held. We agree. Concur—Kupferman, J. P., Evans, Fein and Bloom, JJ.

Markewich, J., dissents in a memorandum as follows: In this proceeding for judicial dissolution (Not-For-Profit Corporation Law, § 1102, subd [a], par [1], cl [A]), petitioner hospital has acted to compel its alleged debtor, Blue Cross, to pay over a sum of money pursuant to a certain stipulation between the parties. The stipulation recites agreement that an order to show cause why Blue Cross "should not pay over * * * all funds held for" the hospital be withdrawn and that Blue Cross "is holding funds of Trafalgar Hospital totaling $45,303.43," going on to describe arithmetically how that sum was arrived at by subtracting specified amounts from "processed allowable claims" owed by Blue Cross to the hospital. It was then agreed that Blue Cross would pay that sum over upon withdrawal of restraints and executions. It was then further stipulated—and this is the nub of the disagreement—"that this Stipulation does not include any other monies due for: A. Rate Adjustments for Previous Years". When petitioner demanded payment, Blue Cross, pointing to the rate adjustments for 1976, not yet quantified at the time of stipulation, but ascertained before the demand as upwards of $90,000 owed by the hospital to Blue Cross, insisted that it was a creditor rather than a debtor by the process of setoff against the hospital, and refused to pay the latter. It is to be recalled that the stipulation was drawn in the first instance to establish the amount of certain offsets, and this was done. Certain figures had not yet been ascertained, inclusive of the amount of rate adjustment, then in flux. What does the stipulation mean? The hospital claims that it is to be read to require payment of the featured sum regardless of the rate adjustment figures. To the contrary, Blue Cross asserts that the contemplated rate adjustment, not yet ascertained, had been omitted from the calculations altogether and now, the amount known, is simply to be set off against the other debt. Thus, there is patent ambiguity concerning the stipulation's meaning as to which, by simple hornbook law, oral testimony may be taken. We are advised that at the time it was entered into, there had been oral discussion by the parties of the nature of

the agreement. The proceeding under review amounts to summary judgment which should not have been awarded in the presence of this factual issue, and accordingly the judgment for petitioner should be reversed and vacated, the motion denied, and the issues remanded for trial.